NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 5, 2022[*]
Decided January 5, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-3479

| | |
|---|---|
| LAMARR T. CRITTENDEN,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division. |
| *v.* | No. 1:18-cv-02897-JPH-MPB |
| BRUCE D. IPPEL, et al.,<br>    *Defendants-Appellees*. | James Patrick Hanlon,<br>*Judge*. |

**O R D E R**

Lamarr Crittenden, an Indiana inmate suffering from flat arches, appeals the entry of summary judgment on his deliberate-indifference claims against Bruce Ippel, his facility's then-doctor, and Wexford of Indiana, LLC, the facility's healthcare

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

provider. The district court concluded that no reasonable jury could find that the defendants consciously ignored Crittenden's medical needs. We affirm.

Crittenden, who is housed at New Castle Correctional Facility, experienced back and foot pain related to his flat arches. The pain was exacerbated by the significant walking required by his kitchen job. To manage that pain, he used cushioned insoles, ibuprofen, and acetaminophen, all of which he purchased from the commissary. But the pain persisted. In August 2017, Crittenden visited a nurse regarding the pain. The nurse referred him to a doctor and told him to file a healthcare request if the pain worsened in the meantime.[1]

In November, Ippel examined Crittenden and discussed treatment options for the pain. Ippel's treatment plan was to prescribe medical orthotic insoles and meloxicam (an anti-inflammatory drug). Ippel mentioned to Crittenden that he might make an arch support out of materials he could find in his cell.

Crittenden did not receive the insoles for several weeks. In February 2018, he filed a healthcare request about the insoles. The staff responded that they would follow up with the "provider" (whose identity is not apparent from the record). The following month, Crittenden promptly filed a second healthcare request about the insoles.

Ippel soon examined Crittenden again and, upon learning that he had not received the insoles, ordered arch supports. In April, Wexford said they would approve the supports but indicated that it would order them with regular medical supplies.

In May, Crittenden filed a healthcare request with regard to his ongoing back and foot pain, and inquired about a pass for a lower bunk, which, he believed, would help alleviate his pain. Wexford staff responded that Crittenden did not qualify for a lower bunk pass because no doctor had prescribed one and his mild-but-chronic pain did not meet the qualifying criteria. Crittenden continued to file grievances about his need for a lower bunk.

---

[1] We confine our discussion of the facts to those relevant to this appeal. Crittenden sued numerous other staff members for deliberate indifference, but he dismissed claims against certain defendants and the district court entered summary judgment for others. Because he raises no arguments on appeal about these claims, we say nothing further about them.

In June, Crittenden finally received his arch supports.

Crittenden brought this suit for deliberate indifference. *See* 42 U.S.C. § 1983. He sued Wexford under a *Monell* theory of liability for its purported custom of understaffing and its lower-bunk policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978). He also sued Ippel for failing to order the insoles.

As relevant here, the district court entered summary judgment for Ippel and Wexford. The court determined that no reasonable jury could find that Ippel deliberately delayed treatment, given his belief that he had placed the order for insoles in November 2017 and his decision to prescribe arch supports in March 2018 as soon as he learned that Crittenden had not received the insoles. The court next determined that no reasonable jury could find Wexford responsible under a *Monell* claim that it had a custom of understaffing or that it had a lower-bunk policy that caused widespread constitutional deprivations.

We review the entry of summary judgment de novo and draw all reasonable factual inferences in Crittenden's favor. *See Hildreth v. Butler*, 960 F.3d 420, 425 (7th Cir. 2020). To overcome summary judgment on his deliberate-indifference claims, Crittenden had to provide evidence from which a reasonable jury could find that he faced a substantial risk of harm from a serious medical condition, and that Ippel and Wexford deliberately ignored the risk. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994). As for his *Monell* claim, Crittenden had to show that Wexford had a custom or policy that caused a constitutional injury. *See Monell*, 436 U.S. at 690–95; *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234–36 (7th Cir. 2021).

Crittenden first argues that the district court erred by not construing the facts in a light favorable to him. He contends that a jury could infer from the long delay in receiving the insoles that Ippel never placed an order. But as the district court explained, Ippel's medical notes (from Crittenden's November 2017 appointment) and Crittenden's own statements (from his March 2018 grievance) reflect that Ippel tried to have the order placed, and Crittenden has not pointed to any evidence suggesting otherwise. Crittenden also offers nothing to counter the court's alternative finding that even if Ippel failed to place an order for the insoles or arch supports, no evidence suggests that Ippel deliberately delayed Crittenden's receipt of these medical devices. Deliberate indifference requires more than negligence or even objective recklessness. *Dean*, 18 F.4th at 241.

Crittenden also argues that Ippel was deliberately indifferent for commenting that he try to make his own arch supports out of materials he could find in his cell. The district court acknowledged the comment but did not address it in its analysis. But in light of Ippel's efforts to prescribe insoles, we do not understand the crude remedy to be anything but a quick fix. The record does not reflect that Ippel deliberately proposed this as a less effective treatment to replace prescribed insoles and pain medication. *See Lockett v. Bonson*, 937 F.3d 1016, 1024–25 (7th Cir. 2019).

Crittenden next challenges the district court's entry of summary judgment for Wexford on his *Monell* claims. He argues, first, that Wexford maintained an unconstitutional custom of understaffing physicians, which, he says, created a backlog that deliberately delayed treatment for prisoners. He points out that he waited three months first to see Ippel, and he cites the affidavits of four other inmates who experienced delayed treatment because of the backlog. But the district court, characterizing the backlog as a condition of the facility (rather than a policy, practice, or custom), rightly explained that Crittenden did not identify any policy or practice showing that Wexford's staffing decisions caused delay or other harm. He did not present evidence from which a jury could find "systemic and gross deficiencies" or a deliberate unwillingness of policymakers to correct known deficiencies. *Hildreth*, 960 F.3d at 426–30 ("[C]ourts have concluded that more than eight incidents over [fewer than six years] does not constitute a 'widespread' practice or custom"); *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (surveying cases that address "inexplicable" delays in treatment which serve no penological interest).

Crittenden also challenges the court's conclusion that he lacked evidence that Wexford had any policy or practice of denying lower-bunk passes to prisoners with his condition. But to establish *Monell* liability for such a policy, Crittenden would have to show a prior pattern of constitutional violations resulting from the policy. *See Dean*, 18 F.4th at 236–37 (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality)). Solely his own experience is insufficient evidence of a pattern of constitutional violations.

We have considered Crittenden's remaining arguments, and none has merit.

AFFIRMED